# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:14-mj-00008-SAB |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |
| v. | (ECF Nos. 9, 10) |
| MASOUD SAIDMASGATI, | |
| Defendant. | |

On January 15, 2014, a complaint was filed charging Defendant Masoud Saidmasgati with Operating a Motor Vehicle Under the Influence of Alcohol, a Drug, or a Combination of Both in violation of 36 C.F.R. 4.23(a)(1); Possession of an Open Container in Violation of 36 C.F.R. 4.14(b): and Possession of a Controlled Substance in violation of 36 C.F.R. 2.35(b)(2). (ECF No. 1.) On March 27, 2014, Defendant filed a motion to suppress evidence. (ECF No. 9.) Defendant Augustine Sanchez, Jr., who has a related action proceeding on citation, joined in the motion to suppress. United States v. Sanchez, Citation No. 2592916/CA74 and 2592917/CA74. Plaintiff filed an opposition to the motion to suppress on April 10, 2014. (ECF No. 10.)

A hearing on the motion to suppress was held on May 21, 2014 before the undersigned. Counsel Brian Fogerty appeared for Plaintiff. Counsel Andras Farkas appeared for Defendant Saidmasgati and counsel Tom Miles appeared for Defendant Augustine Sanchez Jr. This matter was submitted following oral argument at the conclusion of the hearing and was taken under

advisement.  Having considered the moving and opposition papers and the evidence presented at the hearing, the following order issues denying Defendants' motion to suppress.

## I.

## FACTUAL FINDINGS

Ranger Salter has been employed as a park ranger at Sequoia National Park since 2007. At approximately 3:15 p.m. on November 1, 2013, Ranger Salter was in uniform and working in Sequoia National Park.  Ranger Salter was in the process of shuttling gear for another ranger and was driving in his patrol car on the General's Highway when he observed a bear on the southbound shoulder of the road.  At the point where Ranger Salter observed the bear, the General's Highway is a windy, narrow two lane road.  Ranger Salter stopped his vehicle in a turn out on the northbound side of the road and walked across the road to haze the bear.

Ranger Salter began to haze the bear by yelling and clapping his hands.  The bear responded by moving away from the roadway toward an embankment.  At this time, Defendant Saidmasgati was on his way from Fresno to Visalia and was driving through Sequoia National Park. Defendant Saidmasgati was driving southbound on the General's Highway and Defendant Sanchez was a passenger in the vehicle.  Defendants saw the bear as it headed down the embankment when they came around a curve in the roadway.

Ranger Salter was standing about four to five feet from the roadway on the right shoulder, with his back to the road, watching the bear.  He heard the sound of a vehicle and noticed a black Chevy truck about fifty yards away driving toward him in the southbound lane. Ranger Salter heard the occupants of the vehicle make a comment about the bear as the vehicle pulled to a stop next to him.  When the vehicle stopped, Ranger Salter was near the passenger window which was rolled down.  Ranger Salter observed two occupants in the vehicle and an open 24 ounce Coors beer can in the center console.  As he moved toward the vehicle, he observed a strong smell of alcohol coming from the passenger window.

Ranger Salter determined that the occupants of the vehicle were likely drinking and told the driver of the vehicle, later determined to be Defendant Saidmasgati, to pull in front of his patrol car on the northbound side of the roadway to investigate the open container and if the

1 driver was driving under the influence.  Defendant Saidmasgati pulled his vehicle in front of the
2 patrol car.  After the vehicle was parked on the northbound roadway, Ranger Salter asked for the
3 occupants' identification and if there were any other open containers in the vehicle.  Defendant
4 Sanchez handed him an open 24 ounce beer can that was approximately 3/4 full.

## II.

## LEGAL STANDARD

In relevant part, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment."  U. S. v. Jones, 132 S. Ct. 945, 949 (2012).  The basic rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).

Since the Constitution is silent as to how this right should be enforced, the Supreme Court created the exclusionary rule.  U.S. v. Phillips, __ F.Supp.2d __, 2014 WL 1275916, at *2 (E.D. Cal. March 27, 2014).  The exclusionary rule is a "prudential" doctrine that is not a personal constitutional right nor is it designed to "redress the injury" from an unconstitutional search.  Davis v. U.S., 131 S. Ct. 2419, 2426 (2011).  The purpose of the exclusionary rule is to deter future Fourth Amendment violations.  Davis 131 S. Ct. at 2427.  The exclusionary rule takes a "costly toll upon truth-seeking and law enforcement objectives" and is only applied "where its deterrence benefits outweigh its substantial societal costs."  Hudson v. Michigan, 547 U.S. 586, 591 (2006) (internal punctuation and citations omitted).  "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."  Davis, 131 S. Ct. at 2427.

///

///

## III.

## ANALYSIS

Defendants contend that Ranger Salter did not have probable cause to conduct a vehicle stop and for that reason the search was illegal and all fruits of the search must be suppressed. (Mot. to Suppress Evidence 3-4, ECF No. 9.) Plaintiff counters that the original encounter was voluntary and consensual and did not implicate the Fourth Amendment. (Government's Response in Opp. to Def.'s Mot. to Suppress 5-6, ECF No. 10.)

When there is voluntary, consensual contact with a police officer, the Fourth Amendment is not implicated. Florida v. Bostick, 501 U.S. 429, 434 (1991); U. S. v. Summers, 268 F.3d 683, 687 (9th Cir. 2001). However, if the vehicle stop in this instance was not consensual then it must be supported by "a reasonable and articulable suspicion that a suspect has committed a criminal offense." Phillips, 2014 WL 1275916, at *4 (citations omitted). The sole issue to be decided by the Court here is how the initial stop in this incident was conducted.

During the May 21, 2014 hearing, the Court heard testimony from Ranger Salter and Defendant Saidmasgati. The Court finds the testimony of Defendant Saidmasgati is not credible for the following reasons. Initially, Defendant Saidmasgati testified that he had used cocaine the night prior to the incident, had drank most of a twenty-four ounce can of beer prior to leaving Fresno, and had marijuana in his system. The Court finds that Defendant Saidmasgati's recollection and perception of the incident would be influenced by the proximity of his alcohol use to the incident and the presence of drugs in his system at the time of his contact with Ranger Salter.

Additionally, Defendant Saidmasgati testified that he first saw Ranger Salter walking in the middle of the roadway, in the southbound lane, toward on-coming traffic as Defendant Saidmasgati came around a curve in the roadway. From the pull out where Ranger Salter parked, he would have been able to cross directly across the roadway while being able to see oncoming traffic from both directions. From a safety standpoint, the Court finds it to be incredible to believe that an experienced park ranger would walk into oncoming traffic in close proximity to a curve which obscured the presence of oncoming traffic in the hope that oncoming traffic would

see him and respond to his command to stop prior to hitting him. The Court finds the testimony of Ranger Salter, that he parked his vehicle in a pull out where he was out of the way of traffic, and crossed the roadway prior to seeing Defendant Saidmasgati to be more credible. Ranger Salter's testimony demonstrated that he would have a view of on-coming traffic from both directions when crossing the roadway, while Defendant Saidmasgati testified that Ranger Salter was walking into on-coming traffic coming off a blind curve

Finally, Defendant Saidmasgati testified that Defendant Sanchez was talking about the bear when Ranger Salter approached the vehicle, which is consistent with Ranger Salter's testimony that he heard the occupants of the vehicle make a comment about the bear as the vehicle pulled up next to him.

While Defendants argue that it is implausible to find that Defendant Saidmasgati would have voluntarily stopped to speak with the officer when he had open containers of alcohol in the vehicle, based on the Court's experience, people often take action which does not seem reasonable in hindsight, especially when they are under the influence of drugs or alcohol or a combination of both. The Court does not find Ranger Salter's account that Defendant stopped the vehicle to speak with him upon seeing the bear to be implausible as suggested by defense counsel.

Further, Defendants' counsel argued that the ranger was not stopped in the road but motioned for Defendant Saidmasgati to stop as he was crossing the road. However this is not consistent with Defendant Saidmasgati's testimony. Defendant Saidmasgati testified that he initially saw the ranger walking toward him in the middle of the roadway from the north to the south side of the roadway. Ranger Salter stopped, crouched with his right hand on his gun, and raised his left hand indicating that Defendant Saidmasgati should stop. At some time during this time period, Ranger Salter made eye contact with Defendant Saidmasgati. Defendant Saidmasgati testified that Ranger Salter stopped in the roadway and then continued to the shoulder. Defendant Saidmasgati stated he stopped his vehicle approximately 10 feet beyond where Ranger Salter was standing and Ranger Salter approached the passenger window from behind the vehicle. Defendant Saidmasgati said he was going to say something to the ranger, but

1  Defendant Sanchez was talking about the bear as the ranger approached the vehicle.

2  During closing arguments, defense counsel appeared to argue that the witnesses' different testimony regarding the incident could be reconciled and Defendant Saidmasgati simply misunderstood Ranger Salter's attempt to haze the bear as a directive to stop; however the Court does not find this argument persuasive.  Ranger Salter testified that, when he first saw Defendant's vehicle, he was standing four to five feet off the shoulder of the road on the south bound side, with his back to the road, as he watched the bear moving away from the roadway and down the embankment.  This is not consistent with Defendant Saidmasgati's testimony that, after he first saw the bear moving down the embankment, he saw Ranger Salter crossing the road to get to the south side of the roadway.[1]  In light of the foregoing, this Court finds that Defendant ' Saidmasgati's version of events is not credible.

Based upon the moving and opposition papers and the evidence presented at the March 21, 2014 hearing, the Court finds that Defendant Saidmasgati voluntarily stopped the vehicle to speak to Ranger Salter.  The totality of the circumstances involved in the initial contact here do not implicate the Fourth Amendment; and Defendant's motion to suppress is denied.

//
//
//
//
//

---

[1] Prior to the hearing, the parties agreed that the sole issue before the Court in the motion to suppress was whether Defendant Saidmasgati stopped his vehicle voluntarily or stopped in response to Ranger Salter's command.  During closing arguments, Defendant Sanchez' counsel argued that once the vehicle was stopped Ranger Salter did not have reasonable suspicion to further the stop based on the smell of alcohol coming from the passenger side of the vehicle.  However, an officer is not required to eliminate all possible alternative explanations for the smell of alcohol in Defendant's vehicle for that odor, in combination with other relevant facts, to give rise to probable cause.  Fuller v. City of McMinnville, No. 3:10-cv-01420-BR, 2012 WL 2992906, at *8 (D. Or. July 20, 2012); see also Miller v. Harget, 458 F.3d 1251, 1260 (11th Cir. 2006) (Reasonable suspicion existed to detain driver for investigation of whether he was driving under the influence when officer smelled alcohol coming from vehicle the defendant was driving); United States v. Ivey, 307 Fed. Appx. 941, 942 (6th Cir. 2009) (unpublished) (consensual encounter ripened into Terry stop and the smell of alcohol emanating from the vehicle provided reasonable suspicion and justified continued detention.)  In this instance, Ranger Salter observed an open beer can and a strong smell of alcohol emanating from the vehicle.  Given the totality of the circumstances, Ranger Salter had reasonable suspicion to conduct a Terry stop to determine if Defendant Saidmasgati was driving under the influence of alcohol.

## IV.
## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant Saidmasgati's motion to suppress is DENIED.

IT IS SO ORDERED.

Dated:   **May 29, 2014**

UNITED STATES MAGISTRATE JUDGE